No. 3019

Second Circuit

---

MARLER v. EICHER-WOODLAND LUMBER CO.

---

(February 3, 1928.   Opinion and Decree.)
(March 14, 1928.   Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Appeal—Par. 625.
The finding of the trial court on matters of fact where clearly correct are affirmed.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. R. C. Culpepper, Judge.

Action by Norris A. Marler against Eicher-Woodland Lumber Company, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Peterman, Dear & Peterman, of Alexandria, attorneys for plaintiff, appellee.

B. T. Dawkins; W. C. Roberts, of Alexandria, attorneys for defendant, appellant.

ODOM, J.   The defendant prosecutes this appeal from a judgment condemning it to pay plaintiff the sum of $316.65 for saw logs which it is alleged plaintiff furnished and for which defendant agreed to pay.

The amount involved is not disputed, it being conceded that plaintiff delivered the logs as alleged; but defendant denies liability on the ground that the logs and timber were sold and delivered to L. R. Baker who was operating a sawmill for one Mr. Parish, with which mill it had no connection, and that it did not purchase the logs and did not agree to pay for them.

We find the facts to be that L. R. Baker was operating a sawmill in Rapides parish which, he says, was owned by his son-in-law, Parish, who seems to be a non-resident of the state and and whose domicile is not disclosed by the record.

It may be, as alleged and contended by counsel for plaintiff, that Baker owned the mill and that it was purchased in the name of Parish because there were judgments against Baker; or it may be, as further suggested, that the mill was in fact owned by this defendant and only operated by Baker under some undisclosed arrangement. But we think it unimportant for the purposes of this decision who owned the mill, for the case does not hinge on that point.

Regardless of who owned it, the facts are that Baker was in charge of and operating it.

The plaintiff, Marler, was in the logging business and was getting out and delivering saw logs to mills. He says that Baker applied to him to purchase logs. Baker says that Marler applied to him to sell him logs. At any rate, Marler was not willing to sell logs to Baker, for the reason he was afraid that Baker, who was not financially responsible, would not pay for them.

When the negotiations came up between Marler and Baker over the sale of logs, Marler made it plain to Baker that he would not sell the logs to him and look to him for the price.

This fact is testified to by both Marler and Baker.

Baker was asked:

"When you were discussing the question with Mr. Marler, did Mr. Marler make any statement that he wouldn't sell you . directly?"

And he answered:

"Yes. I owed him at that time some money, and he said he had to pay for these logs and he had to know that he was going to get the money."

Baker says that he then told Marler to see Mr. Eicher (president of the defendant company) and that Marler did go to see Eicher and came back and told him that he had made arrangements with Eicher, and that Marler began at once to deliver logs, which he had before refused to do.

That was some time in the month of June. Marler delivered logs at the mill until some time late in August.

The logs delivered were paid for by the defendant company, which issued its checks payable to Marler, one on July 3rd, one on July 10th, one on July 31st, and on August 7th, 14th, 21st, and 28th, and one on September 4th.

The defendant company therefore paid Marler direct for all the logs delivered up to September 4th.

Late in August or in early September there was in circulation a report that Baker was to give up the mill and that another party was to take charge. Marler, on hearing this report, it seems ceased to deliver logs. Baker, who had not at that time released his management of the mill, informed Eicher of that fact and told him that Marler would not deliver any more logs because he was afraid they would not be paid for. Baker says that he suggested to Eicher that he go out to the mill and see Marler about the logs and that Eicher said he could not go in person but would send Mr. Lewis in his stead. Lewis was an employee of defendant company. Eicher admits that he told Baker that and admits that he sent Lewis to see Marler. All the witnesses, including Lewis, say that Lewis did make a trip to see Marler about the logs and that Lewis and Marler met at Marler's residence on a Sunday morning.

After Lewis' visit to Marler and after their conversation about the logs, Marler delivered the logs which are in controversy in this suit and for which, admittedly, he has not been paid.

The authority of Lewis to bind the defendant company for the payment of such logs as Marler might subsequently deliver, can hardly be seriously questioned.

Baker says he told Eicher that Marler would deliver no logs to him, Baker, and that Eicher said he would send Lewis to see about it; and Eicher says he did send Lewis in his stead; so that if, as a matter of fact, Lewis, as the agent of the defendant, agreed that defendant would pay for the logs, defendant is bound.

The record establishes to our entire satisfaction that Lewis did assure Marler

on that Sunday morning that the defendant would take and pay for the logs. There were present and heard the conversation between Lewis and Marler, the following persons: Baker, Howard Marler, son of plaintiff, and N. H. Harrington.

The plaintiff testified that Lewis came to his house and told him they wanted the timber and he told Lewis that he must have some definite understanding about his pay and that Lewis said:

"You needn't worry about your money; we'll pay you every day if necessary."

Mr. Baker testified that after Eicher agreed to send Lewis to see Marler, he and Lewis went for the purpose of getting the logs, and, asked what Lewis said to Marler, he answered :

"He said, 'if you want your money every night, get it every night'."

Baker was asked:

"Did Mr. Lewis ask him (Marler) to let them have logs for the mill?"

And he answered:

"Yes, we went out for that purpose."

And he reiterated that Lewis told Marler he could get his money every night.

Howard Marler said he heard the conversation and that Lewis told his father that they wanted all the timber they could get, and that his father raised the question of pay, and Lewis said:

"If you doubt your pay you can come in every night and get your money."

And that his father said:

"That will be satisfactory to me."

N. H. Harrington, a disinterested witness, said he heard the conversation, and testifies:

"Mr. Lewis and Mr. Baker came out there and Mr. Lewis told him (Marler) that he wanted his timber and he had been letting Mr. Ball have some of the timber and Mr. Lewis said 'We want the timber,' and says, 'don't worry about the pay, if you are afraid of it, every Saturday night you can get it if you want it'."

J. D. Stracener, another disinterested witness, testified that he was at Marler's log "ramp" early in September when Lewis and another man came out and interviewed Marler about logs; that Marler was about to ship his logs to Alexandria, and that Lewis told him not to do so as they ,wanted them.

Lewis says that he did go to see Marler at the suggestion of Eicher, but says he went for the purpose of influencing Marler to sell the logs to Baker instead of to some one else; that his company had an order for some cypress lumber and wanted Baker to saw it; but he denies that he told Marler that the company would take and pay for the logs.

However, his testimony, on cross-examination, is not so strong on that point.

He was asked:

"Didn't you, while out there, state to Marler in the presence of these other witnesses that he need not worry about his pay, that he could get his pay every night?

"A. I don't recall that.

"Q. Do you deny that you made such a remark?

"A. I deny recalling it."

Mr. Eicher said he gave Lewis no authority to bind his company to pay for the timber, and further stated that at no time had he told Marler his company would be responsible to him for any amount.

Marler, however, testified to the contrary on that point.

Marler's testimony that Eicher agreed to pay him for the timber, is corroborated by every circumstance connected with their transactions. It is proved beyond question that Marler refused to sell and deliver logs to Baker on his own responsibility. This fact was communicated to Eicher by Baker and Eicher told Baker to send Marler to him. Marler did see Eicher and immediately after the interview Marler began

to deliver the logs. Eicher admits the interview with Marler, but says he did not agree to pay him.

But the record discloses that the defendant did pay Marler for all the logs delivered up to September 4th. The checks are on file. Not only that, but Baker informed Eicher that Marler was uneasy about his pay, so that Eicher knew that the only hitch was Marler's pay and he sent for Marler. Later, when Marler stopped delivery, Baker told Eicher and Eicher sent Lewis to see him. Eicher knew that Marler would not deliver any more logs because he was afraid he would not be paid, and Lewis was sent to see him.

Now what was the purpose of sending Lewis to see Marler if not to satisfy him on that point? Marler was satisfied and began at once to deliver logs at the mill, which he had theretofore refused to do.

Asserting that the amount due for the logs was Baker's debt, counsel for defendant objected to the introduction of parol testimony tending to show that defendant agreed to pay for the logs, on the ground that such testimony was not admissible to prove the promise to pay the debt of a third person, and he cites article 2278 of the Civil Code and a long list of authorities in support of this contention.

The law cited is good, of course, but not in point.

The debt for the logs was not Baker's debt. Marler had no contractual relations whatever with Baker. He and Baker both say so. Marler refused to sell Baker logs and upon such refusal Eicher, representing defendant, and Lewis, defendant's agent, contracted with Marler to pay for them. So that the debt was defendant's and not Baker's.

Counsel for defendant, in brief, say that all the testimony shows that the logs were sold to Baker and that Baker so testified. Counsel is in error.

At page 27 of the testimony, Mr. Baker was asked:

"Q. When you were discussing the question with Mr. Marler, did Mr. Marler make any statement that he wouldn't sell to you directly?

"A. Yes. I owed him at that time some money, and he said he had to pay for these logs and he had to know that he was going to get the money. * * *

"Q. You say that Mr. Marler told you that he couldn't hold you responsible for this debt?

"A. I don't know that he said exactly that. He just wanted to know that he was going to get his money.

"Q. Who did you tell him to see?

"A. I told him to see Mr. Eicher."

He says, page 28, that Marler saw Eicher at once and the next day began to deliver logs.

Again, page 31, Baker said he told Eicher he could not get the logs, and was asked:

"Q. Then after you told him that did you suggest that he go out there with you?

"A. Yes, sir—I did.

"Q. And did he say he would go?

"A. He sent Mr. Lewis.

"Q. Mr. Lewis went with you?

"A. Yes, sir.

"Q. And you all went to Mr. Marler's house?

"A. Yes, sir.

"Q. Did Mr. Lewis ask him to let them have logs for the mill?

"A. Yes, we went out for that purpose."

Baker then explains that Lewis told Marler he would get his money every day if he wanted it.

Again, at page 37, Baker was asked:

"Q. Did you tell Mr. Marler that you were buying the logs for the Eicher-Woodland Lumber Company or buying them for yourself?

"A. I don't think that was ever mentioned, for myself or for Eicher-Woodland Lumber Company. I was buying—he was in for knowing he was going to get his money."

Aside from the one expression "I was buying" above quoted, Baker no where

said he purchased the logs as an independent deal, and that expression must be interpreted in the light of his other testimony given immediately before and after that statement was made; all off which is to the effect that Marler would not sell him the logs. Upon Marler's refusal to sell the logs to Baker, defendant intervened and agreed to take and pay for them. It took over a contract which Baker tried but failed to make.

It may be well to state that defendant had an interest in securing the logs for the operation of the mill. It was financing the mill under an arrangement by which it was to handle the output on a commission basis, the commission being 10%. It is admitted that defendant was interested in seeing that the mill was operated —no lumber, no sales—no sales, no profit. Lewis explained that they had an order for cypress lumber and they wanted Baker to saw it. Marler had the logs—they were therefore interested in seeing that Baker got the logs to saw. This was a sufficient consideration for the contract which defendant made with plaintiff to pay him for the logs.

The District Judge was of the opinion that the facts justify a verdict for plaintiff. We are of the same opinion, and the judgment is affirmed, with costs.